No. 13-1698

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

LISA BIRON,
Defendant-Appellant

On Appeal from the United States District Court
for the District of New Hampshire

Brief for Appellant

Richard B. Klibaner
B.B.O. no. 275100
Klibaner & Sabino
52 Western Avenue
Cambridge, MA  02139
Tel:  617-492-5085
klibaner@sprintmail.com

# Table of Contents

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts Relevant to the Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument

    1. Motion for Judgment of Acquittal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.1 Count One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.2 Evidence that Biron "used" or "employed" R.B.

            1.2.1 Counts Two through Five. . . . . . . . . . . . . . . . . . . . . . . . . 17

            1.2.2 Count Seven.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        1.3 Evidence of Purpose - Counts Two through Five. . . . . . . . . . . . 22

    2. The jury instruction on specific intent. . . . . . . . . . . . . . . . . . . . . . . . . . 25

    3. Lack of a jury instruction requiring a unanimous finding as to the
        means by which the crimes were committed. . . . . . . . . . . . . . . . . . . 29

    4. Refusal to charge "coerce" as a means of committing Counts Two
        through Seven. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Certificate of Compliance with Rule 32(a)

Table of Authorities

<u>Cases</u>

*Bailey v. United States*,
    516 U.S. 137 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Barber v. United States*,
    No. 93-1090, 1993 U.S. App. LEXIS 21198
    (1st Cir. Aug. 23, 1993) (unpublished). . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ortiz-Graulau v. United States*,
    No. 09-1387, 2012 U.S. Dist. LEXIS 114483,
    2012 WL 3308877 (D.P.R. Aug. 13, 2012). . . . . . . . . . . . . . . . . . . . . . . 19

*Richardson v. United States,*
    526 U.S. 813 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Smith v. United States,*
    508 U.S. 223 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Tilton v. Playboy Entm't Group, Inc*.,
    554 F.3d 1371 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Broxmeyer*,
    616 F.3d 120 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18, 20

*United States v. Chen*,
    913 F.2d 183 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Esch,*
    832 F.2d 531 (10th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Ellis,*
    935 F2d 385 (1st Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Fenton*,
    654 F. Supp. 380 (E.D. Pa. 1987*)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Fernandez-Hernandez*,
    652 F.3d 56 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Fontana*,
    948 F.2d 796 (1st Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Godin*,
    534 F.3d 51 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Hernandez-Albino*,
    177 F.3d 33 (1st Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Hoffman*,
    626 F.3d 993 (8th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Kearns*,
    73 M.J. 177 (C.A.A.F. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Laboy-Delgado*,
    84 F.3d 22 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Marin*,
    523 F.3d 24 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Marino*,
    277 F.3d 11 (1st Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. McCloud*,
    590 F.3d 560 (8th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Merlino*,
    592 F.3d 22 (1st Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Morales-De Jesus*,
    372 F.3d 6 (1st Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Morillo*,
    158 F.3d 18 (1st Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Mubayyid,*
    658 F.3d 35 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Navarro,*
    145 F.3d 580 (3d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Ortiz-Graulau,*
    526 F.3d 16 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22, 24

*United States v. Pagan-Santini,*
    451 F.3d 258 (1st Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Powell,*
    226 F.3d 1181 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*United States v. Reeder,*
    170 F.3d 93 (1st Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Reedy,*
    632 F. Supp. 1415 (W.D. Okla. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

*United States v. Rivera-Rivera,*
    555 F.3d 277 (1st Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Sirois,*
    87 F.3d 34 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

*United States v. Tse,*
    375 F.3d 148 (1st Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*United States v. Vazquez-Castro,*
    640 F.3d 19 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Vik,*
    655 F2d 878 (8th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Williams,*

809 F.2d 75 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Wright*,
   No. 1:12-CR-130, 2013 U.S. Dist. LEXIS 5691,
   2013 WL 164096 (W.D. Mich. Jan. 15, 2013) . . . . . . . . . . . . . . . . . . . 24, 26

*Watson v. United States,*
   552 U.S. 74 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Statutes</u>

18 U.S.C. 2251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## Statement of Jurisdiction

This is an appeal from a judgment in a criminal case in the District of New Hampshire. The district court had subject matter jurisdiction under 18 U.S.C. §3231. Judgment was entered by the district court on May 23, 2013. Addendum , p. ("Add.") 1. The defendant filed her notice of appeal on May 28, 2013. Appendix of the Defendant-Appellant ("D.App.") 16. This Court has jurisdiction over defendant's appeal under 28 U.S.C. §1291.

## Statement of Issues

This brief is filed pursuant to Local Rule 46.6(c) and in accordance with *Anders v. California*, 386 U.S. 738, 744-745 (U.S. 1967). Appellate counsel has not identified any meritorious issues.  The defendant has indicated to appellate counsel that she believes there are meritorious issues for appeal because there was not sufficient evidence to find her guilty of the crimes charged in Counts One through Seven of the indictment, the District Court failed to instruct the jury that in order to convict her on Counts Two through Seven of the indictment it was required to find that she acted with specific intent, that the District Court failed to instruct the jury that it had to agree unanimously on the means by which she committed the crimes charged in those counts. This brief examines these issues, as well as the failure of the District Court to include "coerce" as one of the means by

which she could be found to have committed the crimes charged in Courts Two

through Seven of the indictment.

## Statement of the Case

The first superseding indictment against the defendant charged her with eight

counts. D.App. 8.

The first count charged that she had knowingly transported a minor

identified as "R.B."[1] in interstate commerce with the intent that R.B. engage in the

production of child pornography, a violation of 18 U.S.C. §2423(a).

Counts Two through Seven charged that the defendant knowingly employed,

used, persuaded, induced, enticed and coerced R.B, to engage in sexually explicit

conduct for the purpose of producing certain visual depictions of such conduct,

including computer video files and a digital image, violations of 18 U.S.C.

§2251(a).

Count Eight charged that the defendant knowingly possessed child

pornography, a violation of 18 U.S.C. §2252A(a)(5)(B).

Biron was arraigned and pleaded not guilty. After a jury trial, she was found

guilty on all counts. After a sentencing hearing, she was sentenced to terms of 480

months on Count One, 360 months on Counts Two through Seven, and 120 months

---

[1] The minor is so referred to in this brief.

-2-

on Count Eight, all such terms to run concurrently. Add. 2.

## Statement of Facts Relevant to the Appeal

### The trip to Niagara Falls

In 2012, Lisa Biron's then 14-year-old daughter (referred to during trial and herein as "RB") asked Biron to take her from their home in Manchester, New Hampshire to Canada to meet Kevin Watson, a young man living in Canada near Niagara Falls, with whom she had been exchanging sexually-explicit computer messages and Skype video calls, so that she could lose her virginity and have her first sexual encounter videotaped for "prosperity" (sic). Tr. 2:53 - 55, 89 - 90, 188, 208, 220.[2] Fearing that she might otherwise run away, Biron agreed to take her to meet Watson. Tr. 2:209. Biron, who had begun to participate in some of the video calls, told Watson that she and RB would fly to Buffalo, then rent a car and pick him up. Tr. 2:60-61. They planned to see the sights and stay at a hotel on the Canadian side of the Falls, where Watson could have sex with Biron and RB. Tr. 2:58 - 60, 95 - 97, 188. According to Watson, Biron said, "We could make a porno." Tr. 2:58.

On Friday of Memorial Day weekend, Biron and RB picked Watson up at his

---

[2] The trial transcript is in three volumes. The trial testimony is contained in volumes 2 and 3..

home. Tr. 2:61. Watson brought with him marijuana he had acquired from a relative. Tr. 2:62, 96. After checking into the hotel, the three drove to a liquor store where Biron and RB went in and bought vodka and a case of beer. Tr. 2:62 - 64, 96. Returning to the hotel, the three started drinking and smoking marijuana. Tr. 2:64 - 65. Over the course of the weekend, while continuing to drink and smoke marijuana, Watson had consensual intercourse with both Biron and RB. Tr. 2:64-65, 74-82. While Biron and RB also saw the sights at the Falls, Watson remained in the hotel room, because he could not walk, having burned the bottoms of his feet while drunkenly walking through a fire. Tr. 2:64, 94.

During the weekend, Biron took several short video recordings of approximately 30 - 60 seconds with her iPhone of sexual activity between Watson and RB. Tr. 2:74 - 75, 77-78, 81, 200 - 201, 139 - 140. She also took a still digital picture of the three of them lying in bed, with Watson's penis exposed. Tr. 2:83-84. Exhibits 1I, 3, 4, 5.

**The return to New Hampshire**

During the summer of 2012, Biron met 18-year-old Brandon Ore when he replied to a personal advertisement she had placed on Craigslist, referring to "two girls looking to party, 18, 33." Tr. 2:119, 121 - 122. Within a few days, he came to Biron's home, where they had sexual relations that night. Tr. 2:122, 124, 162. Biron

-4-

invited him to return with a friend. Tr. 2:124, 162. A few days later, he did so. Tr. 2:124. Biron introduced R.B. as her roommate. Tr. 2:124 - 125. That night, Ore had sex with R.B., as his friend did with Biron. Tr. 2:125, 164. The same pattern was repeated five or six times over the next few weeks. Tr. 2:125 - 126. After having a fight with his parents with whom he lived, Ore moved into Biron's home where he, at first, continued to have sex with Biron and R.B., until, after a week or two, he and R.B. became "boyfriend" and "girlfriend" and became monogamous. Tr. 2:126, 130, 164 - 165. 180 - 181. Ore lived with Biron and R.B. for about two months. Tr. 2:127, 143. Everyone in the house routinely smoked marijuana and drank. Tr. 2:172. Ore was frequently "wasted." Tr. 2:172. While he was staying at Biron's home, Biron made a video recording of Ore and RB having sex on a living room couch. Tr. 2:131 - 133. Exhibit 6. On or about May 19, 2012, while at her home in New Hampshire, Biron's iPhone was used to make a video recording of herself having oral sex with R.B. Tr. 2:242, 244, 3:20 - 24, 29, 31. Exhibit 12.

Towards the end of the summer of 2012, Robert Hardy attended a party at Biron's house and had sex with Biron. Tr. 2:179, 181. Sometime later, Hardy moved into Biron's house. Tr. 3:180. Parties attended by Biron, R.B., Ore, Hardy and two other young men continued to take place regularly. Tr. 2:182.

**Possession of child pornography**

A special agent of the FBI testified, based on his computer forensic analysis, that Exhibits 1I, 3, 5, 6 and 12, along with other digital photos and digital video recordings were found on an "HP" laptop computer seized from Biron's home. Tr. 2:220 - 221, 3:17 - 18, 20 - 21, 26.

There was no evidence that any photograph or video depiction of sexual conduct which the jury could have found was created by the defendant was ever distributed or intended to be distributed commercially or (until displayed by the government at the trial) was seen by anyone other than the defendant and Ore. Tr. 2:139 - 140.

## Summary of the Argument

**1. Motion for Acquittal.** The defendant moved for judgments of acquittal on Counts One through Seven of the indictment. The denial of the motion is reviewed de novo by this Court. P. 10.

**1.1 Count One - evidence of Biron's intent.** On Count One, the defendant moved on the ground that there was not sufficient evidence to allow the jury to find beyond reasonable doubt that the defendant has taken R.B. across state lines with the intent to produce child pornography. P. 11. There was only limited evidence that the defendant had the required intent at the time she crossed state

lines. A finding that the defendant had such intent depended on one witness'
testimony that the defendant said to him, before traveling,  "We could make a
porno." P. 12. Though there were a number of reasons to doubt the credibility of
this witness, such determination was ultimately for the jury. Pp. 16.

 **1.2 Evidence that Biron "used" or "employed" R.B..** To convict the
defendant on Counts Two through Seven, the government was required to prove
that she had "employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d]"
R.B. into sexually explicit activity for the purpose of making a visual depiction of
such activity. P. 17. The defendant moved for acquittal on these counts on the
grounds that there no evidence that the defendant had so  "employ[ed], use[d],
persuade[d], induce[d], entice[d], or coerce[d]" R.B. Pp. 17 - 18.

 **1.2.1 Counts Two through Five.** Because all the evidence
tended to show that R.B.'s sexual activity  was consensual and that the trip to
Canada to meet Watson was, in fact, originally instigated by her, the jury could not
have found beyond a reasonable doubt that Biron had persuaded, enticed, induced
or coerced her into such activity. Pp. 18 - 19. The sufficiency of the evidence on
these counts, therefore, depended on evidence that Biron had "used" or employed"
R.B. for such purpose. P. 20.  Because such "use" could be shown simply by
evidence that R.B. served as the subject of Biron's photography, the motion was

correctly denied. Pp. 20 - 21.

    **1.2.2  Count Seven.** Count Seven charged Biron with producing a video which the jury could have found showed her performing a sexual act upon R.B. in the home where they lived. P. 22. There was no evidence as to the circumstances under which the video as made. Viewed in isolation, there was insufficient evidence to prove that Biron employed or used R.B. for the purpose of making this depiction of sexual conduct. Taken in conjunction with the evidence on Counts Two though Six, the evidence would seem to be sufficient to allow the necessary inference. P. 22.

    **1.3 Evidence of purpose** - **Counts Two through Five.** In order to convict Biron on Counts Two through Five, the government was required to prove that she had fostered sexually explicit conduct with the purpose of producing visual depictions of it.Pp. 22 - 23. There was no direct evidence of such intent. P. 23. There was, however, sufficient circumstantial evidence, including the repeated nature of the photographs,  to allow a jury to find the required purpose. Pp. 24 - 25.

    **2. The jury instruction on specific intent**. Conviction for violating 18 U.S.C. §2251(a), charged in Counts Two through Seven, requires proof that the defendant involved a minor in sexually explicit conduct with the specific intent to produce a visual depiction of the conduct. Pp. 25 - 26. Rather than charging the

jury in terms of "specific intent," the trial judge instructed that an element of the offense was that the defendant acted "knowingly" and "for the purpose of producing [a] visual depiction." Pp. 26 - 27. Because there was no objection to the court's instructions, any error is reviewed under the plain error standard. P. 28, The error, however, if any was not "plain." P. 28.

**3. Lack of a jury instruction requiring a unanimous finding as to the means by which the crimes were committed.** The trial judge did not instruct the jury that it was required to find unanimously the means by which Biron had committed the crimes charged in Counts Two through Seven - whether she had employed, used, persuaded, induced, or enticed R.B. to engage in sexually explicit conduct . P. 29. Because there was no objection to the court's instructions, any error is reviewed under the plain error standard. P. 29. Though jury unanimity is required, it is not plain that unanimity is required on the means of commission of an offense. 30 - 31.

**4. Refusal to charge "coerce" as a means of committing Counts Two through Seven.** The defendant's trial counsel objected to the omission of "coercion" as one of means by which Biron could have violated §2251(a), despite the fact that the indictment included coercion as an alternative means of commission. P. 31. Appellate counsel cannot discern how the trial judge's decision

to leave coercion out of his instructions on Counts Two through Seven "impaired the defendant's ability to present a defense." P. 33. A variance from the indictment which reduces the means by which a crime is alleged to have been committed is permissible. P. 33.

## Argument

### 1. Motion for Judgment of Acquittal

At the close of the government's case and again after resting without presenting any evidence, Biron moved for judgments of acquittal on counts one through seven. Add. 8, 10. The motions were denied as to all the counts. Add. 10, 13.

This Court reviews the denial of Biron's Rule 29 motion for acquittal *de novo*. E.g., *United States v. Godin*, 534 F.3d 51, 62 (1st Cir. 2008). In doing so, this Court determines whether, in viewing the evidence in the light most favorable to the jury's verdict, "a rational fact finder could find that the government proved the essential elements of its case beyond a reasonable doubt." *United States v. Marin*, 523 F.3d 24, 27 (1st Cir. 2008). Ultimately, a verdict may only be upheld if the government's evidence proves guilt beyond a reasonable doubt and does not depend on guesswork or speculation. *United States v. Fernandez-Hernandez*, 652 F.3d 56, 71 (1st Cir. 2011). Therefore,

[i]f the evidence "'viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged,' this court must reverse the conviction. This is so because . . . where an equal or nearly equal theory of guilt and a theory of innocence is supported by the evidence viewed in the light most favorable to the prosecution, 'a reasonable jury must necessarily entertain a reasonable doubt.'" *United States v. Flores-Rivera*, 56 F.3d 319, 323 (1st Cir. 1995) (omission in original) (quoting *United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir. 1992)). We must conduct a   close review of the record and "reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." *United States v. Spinney*, 65 F.3d 231, 234 (1st Cir. 1995).

*United States v. Morillo*, 158 F.3d 18, 22-23 (1st Cir. 1998)

### 1.1 Count One

On Count 1, Biron argued that there was not sufficient evidence that she transported R.B. across state lines with the intent to engage in the production of child pornography, the particular criminal sexual activity charged in the superseding indictment, once they reached Canada. Tr. 3:37 - 38. "The plain wording of the statute requires that the *mens rea* of intent coincide with the *actus reus* of crossing state lines." *United States v. Broxmeyer*, 616 F.3d 120, 129 (2d Cir. 2010). *Accord United States v. Hoffman,* 626 F.3d 993, 996 (8th Cir. 2010); *United States v. Kearns,* 73 M.J. 177, 180 (C.A.A.F. 2014)

-11-

The burden of proving that Biron had such intent was on the government. *United States v. Vik*, 655 F2d 878 (8th Cir. 1981). The Court ruled that there was sufficient evidence that at least one of Biron's purposes in bringing R.B. to Canada was to "memorialize" her first sexual experience. Tr. 3:38 - 39. *See United States v. Ellis,* 935 F2d 385 (1st Cir. 1991) (Jury instruction which allowed jury to convict defendant if it found that one of his several motives or purposes for particular interstate family trip was to have his stepdaughter engage in criminal sexual activity was not erroneous, since it was not necessary that predominant purpose of trip be illegal activity.); *United States v. Sirois,* 87 F.3d 34, 39 (2d Cir. 1996) ("jury may find a violation of §2251(a) so long as the evidence shows that illegal sexual activity for the production of visual depictions of that activity was one of the dominant motives for the interstate transportation of the minors . . .")

There was only limited evidence on this issue. Kevin Watson testified that before the trip Biron had said, "We could make a porno." Tr. 2:58. Watson's evidence, however, was called into question by the fact that he never mentioned Biron's remark during his interviews with the Canadian police, tr. 2:107 - 108, did not disclose it until the United States prosecutors asked him a "leading question" immediately before trial, tr. 2:107-108, and believed he needed to please the American prosecutors so that they would report to their Canadian counterparts that

-12-

he had done "a great job," sparing him from prosecution on Canadian charges of having sex with a minor and making child pornography. Tr. 2:98-100, 112.

The remaining evidence on this issue was ambiguous. Brandon Ore, testified that some months after the Canada trip, Biron told him that she wanted to film R.B. having sex with Watson. Tr. 2:142, 158. However, on cross-examination Ore testified that he was never told by Biron or R.B. that they had gone to Canada intending to make a video of R.B. having sex with Watson.

Q. And the plan was to make a video of it; right?

A. I do not know if there was a plan to make a video.

Q. Okay, that's what I want to be sure because they never said that, did they, either of them?

A. Not to my knowledge.

Q. In fact, they talked about how their video was made. You obviously saw it; right?

A. Yes.

Q. But neither of them at any point said to you, you know, we wanted to go to Canada to have sex with Kevin and produce a video?

A. They had never said they wanted to produce a video.

Tr. 2: 159.

Ore repeated the disclaimer on redirect examination.

-13-

Q. One final series of questions. You've indicated that the defendant didn't tell you that they were going to Canada for the specific purpose of creating a video; right?

A. Correct.

Tr. 2:175.

At most, Ore's testimony left it equally likely that Biron's intent to record Watson and R.B. first existed at the time of the recording, as that it existed before the trip.

Robert Hardy's testimony was also ambiguous. He described two conversations with Biron and R.B. He testified that R.B. had told him that when she and Biron went to Canada, it was R.B. who "wanted to lose her virginity and she wanted it recorded, she wanted to record her first time." Tr. 2:187. He then described two conversations with R.B. and Biron. Both conversations were ambiguous as to when Biron's intent to film R.B. and Watson was formed. The first conversation was between Hardy and Biron.

A. The first conversation was me and Lisa.

Q. Okay, and she said exactly what?

A. That they went to Canada for R.B. to lose her virginity and she was going to record it.

Q. She was going to record it –

-14-

A. She recorded it.

Q. Or she recorded it?

A. She recorded it.

Q. Right, she told you she recorded it; right?

A. Yes.

Q. So, just want to be sure. She didn't say we're going to record it, because they had already been up there; right?

A. Yes.

Q. Said we recorded it?

A. Yes.

Tr. 2:200.

The second conversation was between Hardy and both R.B. and Biron.

A. Lisa was talking about how R.B. showed Brandon the video and R.B. was talking about how she went to Canada and she lost her virginity and that Lisa recorded it.

Q. Right. Basically the same as the first; right?

A. Yes.

Tr. 2:200 - 201.

The only other relevant evidence came from Biron's church friend, Lisa

Brien, who testified to a telephone conversation with Biron, in which Biron related

-15-

her conversation with R.B.

A. R.B. said if you don't take me, I'm going to run away. What she was talking about is that she was going to run away to Canada to a boy that was texting and, so she asked her mom if her mom would take her up there. She wanted to have her first sexual experience videotaped for prosperity (sic).

Q. Who wanted to videotape for prosperity (sic)?

A. R.B. asked her mom if she could have a video, if she could videotape her having her first time because she wanted to keep it more as a keepsake I think was more of the word.

Tr. 2:208.

Proof that Biron had acted with the requisite intent ultimately depended on Watson's testimony that she had said, "We could make a porno." Tr. 2:58." Though there was reason for the jury to find his testimony on this point was unreliable, such determinations are, ultimately, for the jury. *United States v. Laboy-Delgado*, 84 F.3d 22, 27 (1st Cir. 1996) (credibility of witness with a "strong motivation to say what the government wanted to hear" was for jury). *See United States v. Merlino,* 592 F.3d 22, 29 (1st Cir. 2010) (in making assessment of sufficiency of the evidence, appellate court does not "make any credibility judgments, as those are left to the jury.")

-16-

**1.2 Evidence that Biron "used" or "employed" R.B.**

**1.2.1 Counts Two through Five**

Counts Two through Five charged Biron with making four video recordings and one digital image of sexually explicit activities, involving R.B. and Kevin Watson, in violation of 18 U.S.C. 2251(a). As relevant to this prosecution, the statute required the government to prove that Biron "employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d]" a minor to "engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 USCS § 2251(a). In moving for acquittal, the defendant argued that,

> as part of the indictment the government must prove that the defendant, Lisa Biron, did knowingly employ, use, persuade, induce, entice or coerce a minor child. And I would submit there's no evidence of any of those factors there.

Tr. 3:39.

In response, the prosecution argued that,

> I think the video evidence speaks for itself. And I think that that video evidence shows that the minor child was at least used, certainly employed by the defendant to produce this child pornography.

Tr. 3:41.

The District Court judge denied the motion, on the grounds that,

-17-

> I think on balance that evidence is sufficient to
> permit a reasonable jury to conclude beyond a reasonable
> doubt that there was either employment, use, persuasion,
> inducement or enticement.

Tr. 3:42.

There was no evidence that Biron had done anything to persuade, induce,

entice or coerce R.B. into engaging in sexually explicit behavior.

> "Persuade," "induce," and "entice" are in effect
> synonyms. See *The Random House Dictionary of the
> English Language* 1076 (unabridged ed. 1971). The idea
> conveyed is of one person "lead[ing] or mov[ing]"
> another "by persuasion or influence, as to some action,
> state of mind, etc." or "to bring about, produce, or cause."
> *Id.* at 726 (defining "induce"); see also id. at 476
> (defining "entice" as "to draw on by exciting hope or
> desire; allure"); *id.* at 1076 (defining "persuade" to mean
> "to prevail on (a person) to do something, as by advising,
> urging, etc." or "to induce to believe; convince").

*United States v. Broxmeyer*, 616 F.3d at 125.

The evidence was that R.B.'s behavior was completely consensual and was,

in fact, originally instigated by R.B. who first engaged in sexually explicit

communications with Watson and then induced Biron to take her to Canada so that

she could have her first sexual experience recorded. Robert Hardy testified that

R.B. had told him that when she and Biron went to Canada, it was R.B. who

"wanted to lose her virginity and she wanted it recorded, she wanted to record her

-18-

first time." Tr. 2:187. Lisa Brien testified to the same effect, that Biron had told her that

> R.B. said if you don't take me, I'm going to run away. What she was talking about is that she was going to run away to Canada to a boy that she was texting and, so she asked her mom if her mom would take her up there. She wanted to have her first sexual experience videotaped for prosperity (sic).

Tr. 2:208.

Similarly, Kevin Watson testified that he had engaged in these activities of his own accord. Tr. 2:90, 92 - 93.

The sufficiency of the evidence on these counts, therefore, depended on whether there was evidence that Biron had "used" or "employed" R.B. "for the purpose of producing any visual depiction of such conduct." 18 USC § 2251(a).

In *United States v. Ortiz-Graulau*, 526 F.3d 16, 18-19 (1st Cir. 2008), this Court held that sufficient evidence that the defendant had used or employed a minor to produce sexually-explicit photographs existed because there was evidence that the defendant had instigat[ed]" the conduct. The Court, however, did not reach the question of "whether something less than instigation might suffice . . ." 526 F.3d at 19. *See Ortiz-Graulau v. United States*, No. 09-1387, 2012 U.S. Dist. LEXIS 114483, 26 - 28, 2012 WL 3308877 26-28 (D.P.R. Aug. 13, 2012) ("use . . .

-19-

requires only that a defendant avail himself of a minor for the purpose of taking sexually explicit photographs. [I]t is irrelevant whether it was the defendant or someone else who first suggested the photos, or whether the minor wanted to be the subject of them.").

Other courts have held, however, that "a person 'uses' a minor to produce child pornography if the minor serves as the subject of photography" conducted by the defendant. *United States v. Sirois,* 87 F.3d at 42. *United States v. McCloud,* 590 F.3d 560, 566 (8th Cir. 2009) ("A defendant 'uses' a minor for purposes of §2251(a) if he photographs the minor engaging in sexually explicit conduct to create a visual depiction of such conduct.) *But see United States v. Broxmeyer,* 616 F.3d at 126 (Insufficient evidence that defendant "used" minor when photographs taken by minor and no evidence that defendant induced minor to take them.)

Applying this standard for "use", the evidence was sufficient to allow a rational jury to find that Biron had committed the crimes set out in Counts Two through Seven.

Alternatively, one may analogize the meaning of "use" in §2251(a) to the meaning of the same term in 18 USC 924(c)(1)(A), which sets out enhanced penalties for the "use" of a firearm in the course of certain crimes. In *Bailey v. United States*, 516 U.S. 137 (1995), the Supreme Court held that "use" in

-20-

§924(c)(1)(A) required that the firearm be "actively employed" in commission of the crime. *Bailey v. United States,* 516 U.S. at 147. *Compare Watson v. United States,* 552 U.S. 74, 83 (2007) ("a person does not "use" a firearm under § 924(c)(1)(A) when he receives it in trade for drugs") with *Smith v. United States,* 508 U.S. 223, 236-237 (1993) ("uses . . . a firearm" is broad enough . . . to cover use of a firearm as an item of barter" to obtain drugs in return.) A broader meaning of "use" which does not require active employment of the would, the Court noted, among other defects make superfluous the alternative statutory prong mandating an increased sentence for those who "carry" a firearm in the course of such crimes. 516 U.S. at 150. Similarly, a too broad definition of "use" in §2251(a) would make superfluous the alternative terms "employs, uses, persuades, induces, entices, or coerces" in that subsection. "Judges should hesitate . . . to treat [as surplusage] statutory terms in any setting, and resistance should be heightened when the words describe an element of a criminal offense." *Bailey v. United States,* 516 U.S. at 145, (quoting *Ratzlaf v. United States,* 510 U.S. 135, 140-141 (1994)). However, it appears that even if the "use" required by §2251(a) requires the *active* employment of the minor in the production of the visual depiction, the evidence that Biron intentionally took sexually-explicit photographs or video recordings of R.B. would have allowed a rational jury to find that she "used" R.B. for such purpose.

### 1.2.2 Count Seven

Count Seven of the indictment charged Biron with producing a video which the jury could have found showed her performing a sexual act upon R.B. in the home where they lived. Exhibit 12, Tr. 2:242, 248, 253, 3:3 - 4. The video was found on the hard disk of a computer which the jury could have found belonged to Biron and in a location or "folder" which the jury could have found was used to backup files from a cellphone which the jury could have found belonged to Biron. Tr. 2:219 - 220, 229; 3:11, 20 - 21, 22 - 23. There was no evidence, however, as to the circumstances under which the video as made or whether Biron knew it was being made while the sexual conduct was happening. If this count is viewed in isolation, there was insufficient evidence to allow the jury to find beyond a reasonable doubt that Biron employed or used R.B. for the purpose of making this depiction of sexual conduct. However, taken in conjunction with the evidence on Counts Two through Five, the evidence would seem to be sufficient to allow the necessary inference.

### 1.3 Evidence of purpose - Counts Two through Five

A conviction of §2251(a) also requires that the defendant act with the purpose "to foster sexually explicit conduct by a minor in order to make a visual depiction of it." *United States v. Ortiz-Graulau,* 526 F.3d at 19. Thus, the

prosecution was required to prove beyond a reasonable doubt that Biron fostered the sexually explicit conduct with the intention or plan of producing visual depictions of it. *United States v. Chen*, 913 F.2d 183, 189-190 (5th Cir. 1990) ("'Purpose' is "that which one sets before him to accomplish; an end, intention, or aim . . .") There was, however, no direct evidence that Biron's intention in making possible the sexual conduct between Watson and Ore and her daughter which formed the basis for her conviction on Counts Two through Six[3] was to produce the charged photograph and videos. Though Kevin Watson testified that before the Canadian trip Biron had said, "We *could* make a porno", tr. 2:58 (emphasis added), there was no direct evidence of Biron's intent at the time the visual depictions were made.[4] There was no evidence, like that in *United States v. Morales-De Jesus,* 372 F.3d 6, 21-22 (1st Cir. 2004), that the defendant "concealed from the minor the fact that he was videotaping her," or that Biron "gave [R.B.] specific instructions regarding certain positions [she] wanted her to assume relative to the camera, instructed her on what to say while the camera recorded [the] activities, [or] used a

---

[3] At least one of Biron's purposes, evidently, was to herself have sexual relations with Watson. Tr. 2:142.

[4] Lisa Brien's testimony indicated that Biron had taken R.B. to Canada to avoid her going there on her own to meet Watson. Tr. 2:208.

remote control to zoom the camera in and out while [R.B. was] having sex."[5] Any

finding that Biron acted with the required purpose must depend, therefore, on

inferences from her behavior while the depictions were made.

As in *Ortiz-Graulau,* however, there was sufficient circumstantial evidence

to allow a jury to find the required purpose.

> Ortiz seems to say that evidence of such purpose is
> lacking because there is no proof that sexual acts or poses
> were performed in order to make photographs . . . .
>
> Ortiz[] . . . implies that the conduct was occurring
> anyway and just happened to be photographed. But the
> number of photographs, many of sexually explicit poses,
> permits a strong inference that some of the conduct
> occurred in order to make the photographs. . . . Here, a
> jury could infer that at least some of the sexual conduct
> occurred in order to make a depiction of it.
>
> 526 F.3d at 19.

The evidence against Biron was similar in some respects to that held

sufficient in *United States v. Wright*, No. 1:12-CR-130, 2013 U.S. Dist. LEXIS

5691, 21-22, 2013 WL 164096 (W.D. Mich. Jan. 15, 2013).

The sexually explicit  conduct was not incidental to

---

[5] Watson testified that Biron told him she was making a *non-sexual* video so that he would have "proof" that he could show a friend. Tr. 2:73 - 74. Exh. 2. This video did not form the basis for any of the counts against Biron. Ore testified that on one occasion Biron suggested that he and RB have sex on a couch and then filmed them. Tr. 2:131 - 132. This video formed the basis only for Count VI.

the images - it was the central theme of the pictures.
There was no apparent purpose for the pictures other than
to capture a visual depiction of that sexually explicit
conduct. Moreover, the number of photographs, the
sexually explicit poses, and the fact that the pictures were
taken on three different days, permit a strong inference
that some of the conduct occurred in order to make the
photographs.

Such evidence, combined with Watson's testimony that Biron told him to

have sex with R.B., tr. 2:74, was sufficient to allow the jury to draw the inference

that Biron had as a purpose in the encounter the making of depictions of sexual

activity.

## 2. The jury instruction on specific intent

Counts Two through Seven of the indictment charged Biron with violating

18 U.S.C. §2251(a).  As this Court held in *Barber v. United States*, No. 93-1090,

1993 U.S. App. LEXIS 21198, 8 (1st Cir. Aug. 23, 1993) (unpublished), "18

U.S.C. §2251(a) . . . requires proof that [the] defendant used a minor to engage in

sexual conduct 'for the purpose of' producing a picture of such conduct . . ."

Therefore, "the government bears the burden of establishing, beyond a reasonable

doubt, that the defendant acted *purposefully* to involve a minor in sexually explicit

conduct and to produce a visual depiction of that conduct." *United States v.

Fenton*, 654 F. Supp. 379, 380 (E.D. Pa. 1987) (emphasis added.).

-25-

In §2251(a), "'[p]urpose' refers to the desire that a particular result will occur." *Tilton v. Playboy Entm't Group, Inc.*, 554 F.3d 1371, 1377 (11th Cir. 2009). Thus, "[p]urpose", as used in the statute, corresponds with the concept of "specific intent". *United States v. Esch,* 832 F.2d 531, 536 (10th Cir. 1987) (citing *United States v. Bailey*, 444 U.S. 394, 405, 62 L. Ed. 2d 575, 100 S. Ct. 624 (1980)). See *United States v. Wright*, 2013 U.S. Dist. LEXIS 5691 at 20 ("'For the purpose of' means that the defendant acted with the specific intent of creating visual depictions of sexually explicit conduct."); *United States v. Reedy,* 632 F. Supp. 1415, 1422 n. 17 (W.D. Okla. 1986) ("Because a defendant must act with a specific purpose to produce a visual depiction of sexually explicit conduct, actions taken with mere knowledge, recklessness or negligence are not prohibited.") It was essential, therefore, that the trial judge correctly charge the jury regarding the specific intent which the prosecution was required to prove.

In his instructions to the jury on Counts Two through Seven, the trial judge never used the words "intent" or "specific intent." Instead, he charged the jury that,

> The defendant can be found guilty of these crimes only if the government proves the following elements beyond a reasonable doubt:
>
> . . .
>
> 2. The defendant *knowingly* employed, used, persuaded,

-26-

induced, or enticed R.B. to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

. . . .

Tr. 3:89. (Emphasis added.)

He then defined "knowingly":

KNOWINGLY: The term knowingly as used in these instructions to describe the alleged state of mind of the defendant means that she was conscious and aware of her actions, that she realized what she was doing and did not act because of ignorance, mistake or accident.

Tr. 3:91.

By contrast, he did not define the concept of acting for or with a "purpose".

To the extent that the trial judge charged the jury with finding only that Biron acted "knowingly" – defined as consciously and not because of ignorance, mistake or accident – such instruction was incorrect, because it allowed the jury to convict Biron without finding that she had acted with the required specific intent.

The Model Penal Code recognizes four mental states, purpose, knowledge, recklessness, and negligence. ALI Model Penal Code § 2.02 (Prop. Off. Draft 1962). From purpose to negligence the scope of activities meeting the standard for the mental state or *mens rea* increases. Because a defendant must act with a specific purpose to produce a visual depiction of sexually explicit conduct, **actions taken with mere knowledge**, recklessness or negligence **are not prohibited.**

-27-

*United States v. Reedy*, 632 F. Supp. at 1422 n. 17 (emphasis added).

The issue, therefore, is whether charging the jury that the government was required to prove that Biron acted "for the purpose of producing a visual depiction of such conduct" supplied the necessary instruction on the required intent sufficiently to overcome the use of the term "knowingly". *Cf. United States v. Hernandez-Albino,* 177 F.3d 33, 41-42 (1st Cir. 1999) (Unnecessary to charge that act done "knowingly" when charging that it must be done with a specified purpose).

Because Biron's trial counsel did not object to the charge, the instructions are reviewed for plain error. *United States v. Vazquez-Castro*, 640 F.3d 19, 24 (1st Cir. 2011). Plain error exists if the error was "obvious and clear under current law, prejudicial (i.e., affected the outcome of the  district court proceedings), and that seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Rivera-Rivera,* 555 F.3d 277, 285-286 (1st Cir. 2009).

If there was error in the charge in this case it was not plain. Present counsel has not been able to locate any reported decision requiring an instruction which goes beyond instructing the jury that a defendant charged under §2251(a) acted "for the purpose" of producing a visual depiction of sexually explicit conduct or

-28-

that inclusion of the term "knowingly" makes the instruction incorrect.

**3. Lack of a jury instruction requiring a unanimous finding as to the means by which the crimes were committed.**

The District Court instructed the jury that "[i]n order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous as to each count." Tr. 3:94. In defining the elements of Counts Two through Seven, it instructed the jury that the second of three elements was that:

> 2. The defendant knowingly employed, used, persuaded, induced, or enticed R.B. to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct,

Tr. 3:89.

The court did not, however, instruct the jury that it had to unanimously agree on the means by which the defendant had committed the acts charged, thereby leaving open the possibility that the jury was less than unanimous on the question of whether Biron had "employed, used, persuaded, induced, or enticed" R.B. to engage in sexually explicit conduct for such purpose. There was no objection to the lack of such an instruction, and this Court reviews the error under the plain error standard. *United States v. Tse*, 375 F.3d 148, 158 (1st Cir. 2004). Relief under the plain error standard requires (1) an error, (2) that is plain,  (3) that is likely to alter

the outcome, and (4) that is sufficiently fundamental to threaten the fairness, integrity, or public reputation of judicial proceedings. *United States v. Tse*, 375 F.3d at 158 - 159. *Accord, United States v. Pagan-Santini,* 451 F.3d 258, 267 (1st Cir. 2006) (lack of request for unanimity instruction resulted in plain error review).

"[A] jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element." *Richardson v. United States,* 526 U.S. 813, 817 (1999). A jury, however, is not required to agree unanimously on the means by which the defendant committed the alleged crime. *United States v. Reeder,* 170 F.3d 93, 105 (1st Cir. 1999). Thus, in *Reeder,* this Court held that the jury was not required to agree unanimously on the particular "theories and acts of fraud" constituting the alleged scheme to defraud. 170 F.3d at 105. In *United States v. Powell,* 226 F.3d 1181, 1189, 1195 (10th Cir. 2000), the Court held that the "trial judge properly instructed the jury that the first element of the offense could be proven by the prosecution demonstrating beyond a reasonable doubt that the defendant seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away" the victim and that "the trial judge did not commit reversible error by failing to instruct the jury that, in order to find such element of the offense, they must all concur on the means by which the defendant satisfied the first element of the offense." Thus, "[t]he trial judge did not err in not charging the jury with a specific

unanimity instruction." *United States v. Powell,* 226 F.3d at 1196. *See United States v. Navarro,* 145 F.3d 580, 592 (3d Cir. 1998) (no plain error when no specific unanimity instruction given on three alternative possible intents constituting element of money laundering charge).

There appears to be no plain error in the lack of an instruction that the jury was required to agree unanimously on whether the defendant employed, used, persuaded, induced, or enticed R.B.

**4. Refusal to charge "coerce" as a means of committing Counts Two through Seven.**

During a discussion with counsel on the defendant's motion for acquittal, the trial judge commented that he intended not to include in his jury instructions coercion as one of the means by which the defendant could be found to have violated §2251(a), leaving "employ, use, persuade, induce [and] entice" as possible means for the jury to consider. Tr. 3:39, 42. The defendant's trial attorney objected to the omission of "coerce," on the ground that,

> The indictment spells out, among others, the term
> coercion. That was what was presented to the grand jury.
> And while I understand where the court is coming from, I
> think that is part of the statutory language . . . .
>
> Tr. 3:43.

The trial judge then noted and overruled the "objection to my proposal not to instruct on coercion as a form of action, that's one among several that are charged in the indictment . . ." Tr. 3:44. A charge conference followed shortly, at which time the trial judge noted that the defendant's "objection about the leaving out coercion" was "preserved."

> The failure by a district court to give requested jury instructions is only reversible error if the requested instruction "(1) is substantively correct; (2) was not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense."

*United States v. Marino,* 277 F.3d 11, 35 (1st Cir. 2002) *(quoting United States v. Williams,* 809 F.2d 75, 86 (1st Cir. 1986)).

The defendant's requested instruction, that the jury be charged that coercion was one of the means by which the defendant could be found guilty of violating §2251(a) was obviously correct as it quoted the statute. It was also not substantially covered in the charge, which omitted any mention of coercion, while referring to the other means of commission of the offense. However, appellate counsel cannot discern how the trial judge's decision to leave coercion out of his instructions on Counts Two through Seven "impaired the defendant's ability to present a defense." *United States v. Williams,* 809 F.2d at 86.

-32-

To the extent that trial counsel's objection was based on the variance

between the indictment and the offense as presented to the jury, this Court has held

that a variance which reduces the means by which a crime can be committed from

those alleged in the indictment is permissible. *United States v. Mubayyid*, 658 F.3d

35, 49-51 (1st Cir. 2011) (defendant could be convicted of conspiracy to import

hashish on indictment charging conspiracy to import hashish and marijuana). *Cf.,*

*United States v. Fontana*, 948 F.2d 796, 801 (1st Cir. 1991) (No error when

indictment deviated from statute by charging violations "in the conjunctive rather

than the disjunctive" because indictment "adequately apprised [the defendant] of

the government's intention to charge him under either prong of the . . . statute.")

## Conclusion

For the reasons stated above, appellate counsel concludes that there are no

claims meriting appeal.

Respectfully submitted,

/s/Richard B. Klibaner
Richard B. Klibaner
Attorney for Lisa Biron
BBO #275100
Klibaner & Sabino
52 Western Avenue
Cambridge, MA 02139-3751
(617) 492-5085
klibaner@sprintmail.com

-33-

Certificate of Compliance with Rule 32(a)

The brief complies with the type-volume limitation, the typeface requirements and the type style requirements of Fed.R.App.P. 32(a) because it contains 7465  words and has been set in no less than 14-point Times New Roman typeface.

/s/Richard B. Klibaner
Richard B. Klibaner

Certificate of Service

I hereby certify that on May 28, 2014 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system: United States of America.

/s/Richard B. Klibaner
Richard B. Klibaner

-34-

**Addendum**

**Table of Contents**

Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Excerpt of transcript (motion for acquittal). . . . . . . . . . . . . . . . . . . . . . . . . 7

Excerpt of transcript (objection to jury instruction - "coerce"). . . . . . . . . . . . . 14

Excerpt of transcript (jury instruction - Counts Two to Seven). . . . . . . . . . . . . 18

Excerpt of jury instruction (definition of "knowingly"). . . . . . . . . . . . . . . . . . . 19

18 U.S.C. §2251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

<table>
<tr><td>UNITED STATES OF AMERICA</td><td>**JUDGMENT IN A CRIMINAL CASE**<br>(For Offenses Committed On or After November 1, 1987)</td></tr>
<tr><td>v.</td><td></td></tr>
<tr><td></td><td>Case Number: 12-cr-140-01-PB</td></tr>
<tr><td>Lisa Biron</td><td></td></tr>
<tr><td></td><td>**James Moir, Esq.**<br>Defendant's Attorney</td></tr>
</table>

## THE DEFENDANT:

☐   pleaded guilty to count(s): __.

☐   pleaded nolo contendere to count(s) __ which was accepted by the court.

☒   was found guilty on count(s) <u>1s-8s of the Superseding Indictment</u> after a plea of not guilty.

**ACCORDINGLY**, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. §2423(a) and 2427 | Transportation with intent to engage in criminal sexual activity | May 23, 2013 | 1s |
| 18 U.S.C. §2251(a) and 2256 | Sexual Exploitation of Children | May 23, 2013 | 2s-7s |
| 18 U.S.C. §2252A(a)(5)(B) | Possession of child pornography | May 23, 2013 | 8s |

    The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s) __ and is discharged as to such count(s).

☐   Count(s) dismissed on motion of the United States: __.

    IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

May 23, 2013
Date of Imposition of Judgment

Signature of Judicial Officer

Paul Barbadoro
United States District Judge
Name & Title of Judicial Officer

Date

CASE NUMBER:   12-cr-140-01-PB
DEFENDANT:   Lisa Biron

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **480 months.**

**This term of 480 months on Count One, 360 months on Counts Two through Seven, and 120 months on Count Eight. All such terms to run currently.**

☒   The court makes the following recommendations to the Bureau of Prisons:

**That the defendant participate in a sex offender treatment program while incarcerated, if eligible.**

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district.
☐   on __ at   __.
☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
☐   before __ on ___.
☐   as notified by the United States Marshal.
☐   as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
Deputy U.S. Marshall

ADD-2

CASE NUMBER:   12-cr-140-01-PB                                                                    Judgment - Page 3 of  6
DEFENDANT:      Lisa Biron

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of   **Life** .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

The defendant is required to register initially, and to keep this registration current, in each jurisdiction where the defendant resides, works, and attends school.   In addition, for initial registration purposes only, the defendant must register in the jurisdiction where he is convicted, if he does not reside in that jurisdiction.   The defendant must initially register before completing imprisonment.

*Pursuant to 42 U.S.C. § 14135a, the defendant shall submit to DNA collection while incarcerated in the Bureau of Prisons, or at the direction of the U.S. Probation Office.*

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance.   The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 72 drug tests per year of supervision.

☐   The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.   (Check if applicable)

☒   The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).   The defendant shall also comply with the additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   The defendant shall not leave the judicial district without permission of the court or probation officer;
2)   The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3)   The defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)   The defendant shall support his or her dependents and meet other family responsibilities;
5)   The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)   The defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)   The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)   The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)   The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)   The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)   As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

CASE NUMBER:  12-cr-140-01-PB                                          Judgment - Page 4 of  6
DEFENDANT:      Lisa Biron

# SPECIAL CONDITIONS OF SUPERVISION

In addition, the defendant shall comply with the following special conditions:

The defendant shall participate in a program of mental health treatment, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer.   The defendant shall pay for the cost of treatment to the extent she is able as determined by the probation officer.

The defendant shall neither possess nor have under her control any material depicting sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2) involving adults or children.   This includes but is not limited to any 'matter' obtained through access to any computer or any material linked to computer access or use.

The defendant shall maintain a complete, current inventory of her computer access including but not limited to any bills pertaining to computer access, telephone bills used for modem access, or other charges accrued in the use of a computer.   The defendant shall submit a monthly record of computer use and bills to the probation officer and shall provide the probation officer with any on-line screen names or passwords she uses.   The defendant shall not use any software designed for the purpose of encryption or wiping computer disk space and/or drives.

The defendant shall participate in a sex offender specific assessment as directed by the supervising officer.

The defendant must participate in a specialized sex offender treatment program that may include use of a plethysmograph.   The defendant shall pay for the cost of treatment to the extent she is able as determined by the probation officer.

The defendant must submit to polygraph examination as a containment strategy for the management of sex offenders.

The defendant may not directly or indirectly contact the victim or any child under age 18; and, may not loiter within 100 yards of any school yard, playground, swimming pool, arcade, or other such place frequented by children.

The defendant may not loiter within 100 yards of any school yard, playground, swimming pool, arcade, or other such place frequented by children.

The defendant may not use sexually-oriented telephone numbers or services.

The defendant shall consent to third-party disclosure to any employer, potential employer, community service site, or other interested party, as determined by the probation officer, of any computer-related restrictions that are imposed.
The defendant's place of residence may not be within 100 yards of any park, playground, public pool, or any business or facility operated principally for the care, control, custody or supervision of, or use by minor children.

The defendant is barred from the use of the internet and all media devices with interactive computer service, as defined in U.S.C. § 230(f), without prior approval of the probation officer.

The defendant shall consent to the installation of systems that will enable the probation office or its designee to monitor computer use on any computer owned or controlled by the defendant.   The defendant shall pay for the cost of the installation of such systems to the extent she is able as determined by the probation officer.

The defendant shall submit her person, residence, office, or vehicle to a search conducted by a U.S. Probation officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion that contraband or evidence of a violation of a condition of release may exist; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

**Upon a finding of a violation of probation or supervised release, I understand that the court may:   (1) revoke supervision; (2) extend the term of supervision; and/or (3) modify the conditions of supervision.**

**These conditions have been read to me.   I fully understand the conditions and have been provided a copy of them.**

(Signed)

_____                    _____
Defendant                                                      Date

_____                    _____
U.S. Probation Officer/ Designated Witness          ADD-4       Date

CASE NUMBER:   12-cr-140-01-PB
DEFENDANT:     Lisa Biron

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 6.

|          | Assessment | Fine | Restitution |
|----------|-----------|------|-------------|
| Totals:  | $800.00    |      |             |

☐   The determination of restitution is deferred until .   An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐   The defendant shall make restitution (including community restitution) to the following payees in the amount listed.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.   However, pursuant to 18 U.S.C. § 3664(i), all non-federal victims must be paid in full prior to the United States receiving payment.

| Name of Payee | **Total Amount of Loss | Amount of Restitution Ordered | Priority Order or % of Pymnt |
|---------------|------------------------|-------------------------------|------------------------------|
|               | TOTALS:                | $   0.00                      | $   0.00                     |

☐   If applicable, restitution amount ordered pursuant to plea agreement.

☐   The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. §3612(f).   All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

☐   The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐   The interest requirement is waived for the       ☐ fine    ☐ restitution.

☐   The interest requirement for the       ☐ fine and/or    ☐ restitution is modified as follows:

ADD-5

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev 09/11) Judgment in a Criminal Case - Sheet 6 - Schedule of
Payments

| CASE NUMBER: | 12-cr-140-01-PB | Judgment - Page 6 of 6 |
|---|---|---|
| DEFENDANT: | Lisa Biron | |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A** ☒ Lump sum payment of $ 800 due immediately.

☐ not later than _, or
☐ in accordance with ☐ **C**, ☐ **D**, or ☐ **E** below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ **C**, ☐ **D**, or ☐ **E** below); or

**C** ☐ Payment in installments of $ over a period of , to commence days after release from imprisonment to a term of supervision; or

**D** ☐ Within thirty days of the commencement of supervision, payments shall be made in equal monthly installments of $ during the period of supervised release, and thereafter.

**E** ☐ Special instructions regarding the payment of criminal monetary penalties:



Criminal monetary payments are to be made to Clerk, U.S. District Court, 55 Pleasant Street, Room 110, Concord, NH 03301. Payments shall be in cash or in a bank check or money order made payable to Clerk, U.S. District Court. Personal checks are not accepted.

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are to be made payable to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States Attorney.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Payments shall be applied in the following order (1) assessment, (2) restitution principal, (3 )restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                             *
UNITED STATES OF AMERICA       *
                             *   12-cr-140-01-PB
          v.          *   January 10, 2013
                             *   9:25 a.m.
LISA BIRON                 *
                             *
* * * * * * * * * * * * * * * * *


DAY 3
TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE PAUL J. BARBADORO
AND A JURY




Appearances:

For the Government:    John P. Kacavas, U.S. Attorney
                      Helen Fitzgibbon, AUSA
                      53 Pleasant Street
                      Concord, NH 03301

For the Defendant:     James H. Moir, Esq
                      Moir & Rabinowitz, PLLC
                      5 Green Street
                      Concord, NH  03301

Court Reporter:        Sandra L. Bailey, LCR, CM, CRR
                      Official Court Reporter
                      United States District Court
                      55 Pleasant Street
                      Concord, NH  03301
                      (603)225-1454

38

1    upon the government resting and of course the close of

2    the evidence and looking at it obviously in a light most

3    favorable to the government, as far as Count One goes,

4    which is the transportation with the intent, I would

5    request the court dismiss that charge because there

6    really has been no evidence of, and the elements of the

7    offense, we'll go over the instructions, but one of the

8    elements is transport with an intent to engage in sexual

9    activity, in this case child pornography.  Again,

10    there's no question from the evidence you saw that in

11    Canada there was pornography created.  I think it's very

12    clear.

13          THE COURT:  What are you saying to the

14    government's argument that they elicited testimony that

15    at least one of the purposes of the trip was to

16    memorialize her first sexual experience, and that

17    suggests that before even embarking on the trip, that

18    there was an intention to prepare a memorialization of

19    that experience which would involve the production of

20    child pornography?

21          MR. MOIR:  I was listening very carefully to

22    the evidence as it came in, your Honor, and my

23    understanding is that, number one, Kevin Watson

24    indicated on cross-examination that he was unaware of

25    any such intent.  Brandon Ore testified I believe the

```
 1   same way.  Mr. Hardy, I'm not sure where we ended up --
 2          THE COURT:  I think, again, you do a good job
 3   in cross-examining and I do think there's room to argue
 4   that point, but I have to say construing the evidence in
 5   a light most favorable to the government I think there
 6   is sufficient evidence to support the conclusion that
 7   that was one of the purposes for which they entered, so
 8   I'll overrule your objection on that point but recognize
 9   it's a fair ground for argument.
10          MR. MOIR:  Very good.  Dealing with Counts Two
11   through Seven, those are all the sexual exploitation of
12   children counts.  In this case I think the evidence was
13   quite clear from the testimony of everyone that R.B.
14   engaged in sexual relations voluntarily, I guess that's
15   the word I'll use, and certainly as part of the
16   indictment the government must prove that the defendant,
17   Lisa Biron, did knowingly employ, use, persuade, induce
18   entice or coerce a minor child.  And I would submit
19   there's no evidence of any of those factors there.
20          THE COURT:  Well, let's separate out the issue
21   of coercion because my current thinking is, to avoid
22   confusion here, I would charge using the other forms of
23   action.  It's quite clear that, and I propose to
24   instruct, that consent by the minor is not a defense to
25   any of the charges in the indictment.  It simply isn't a
```

1  defense to production of child pornography that the

2  minor can consent, because the minor can't consent.

3              MR. MOIR:  Nor are we going to argue that,

4  your Honor.

5              THE COURT:  And so I want to make that clear

6  at the outset.  So, then you have to say let's look at

7  the other elements, other terminology in the statute.

8  Employed, used, persuaded, induced or enticed.  You

9  don't think there's any evidence that would permit a

10  jury to conclude that there was employment, use,

11  persuasion, inducement or enticement?

12             MR. MOIR:  That's correct.

13             THE COURT:  The evidence is sufficient to

14  support a conclusion that your client was the one, and

15  you can say there's reasonable doubt about this, but the

16  evidence is sufficient if construed in a light most

17  favorable to the jury to support a conclusion that your

18  client was the one who was actually operating the

19  recording device.

20             MR. MOIR:  That's correct.

21             THE COURT:  And with respect to at least one

22  of the videos there's evidence to believe that the minor

23  was not even aware that the recording was occurring

24  during a significant portion of the event; right?

25             MR. MOIR:  Right.

1      THE COURT:  I think there's evidence on that

2  point.  And so how is not employment of R.B. -- how is

3  it not the defendant -- we also recognize a

4  mother/daughter relationship here, we also recognize

5  that the mother was the one buying the tickets,

6  transporting the child, paying for the hotel room,

7  arranging with the people involved to have sex with her,

8  how is it not employment of her in sexually explicit

9  conduct?

10      MR. MOIR:  Well, your Honor, obviously that's

11  ultimately what the jury will have to decide.

12      THE COURT:  Yeah, but you're saying there's

13  not sufficient evidence to permit a conclusion that any

14  reasonable juror could find that she was -- she employed

15  the -- R.B. to engage in sexually explicit conduct.

16      MR. MOIR:  That is my position, your Honor.

17      THE COURT:  Okay.  What does the government

18  want to say in response to that?

19      MR. KAVACAS:  Well, your Honor, I think the

20  video evidence speaks for itself.  And I think that that

21  video evidence shows that the minor child was at least

22  used, certainly employed by the defendant to produce

23  this child pornography.

24      THE COURT:  Yeah, let's say that a -- let's

25  take an extreme case.  For example, suppose that two

```
1    minors decide to engage in sexual, explicit sexual
2    conduct in a public place and someone films that.  Is
3    the person filming that using, employing those minors to
4    produce child pornography?
5            MR. KACAVAS:  I mean, it may be more
6    attenuating in light of the fact that there's no
7    connection between the two minors and the film producer,
8    but I would argue yes, that person is using those two
9    minors to produce child pornography.
10           THE COURT:  I think the answer to that
11   question is yes, even in that extreme case.  Of course
12   this one is obviously much different.  And I don't think
13   you can ignore the existence of the parent/child
14   relationship and the act of involvement in the mother in
15   encouraging people to have sex with the daughter,
16   encouraging and making arrangements for the people to
17   have sex and recording, being the one recording R.B.
18   having sex.  I think on balance that evidence is
19   sufficient to permit a reasonable jury to conclude
20   beyond a reasonable doubt that there was either
21   employment, use, persuasion, inducement or enticement.
22           I'm going to leave out coercion.  I think an
23   argument can be made that there would be coercion here
24   as well, but I don't want to create confusion between
25   the issue of consent or not, and it might be harder to
```

1  explain.  I am going to instruct the jury that her

2  consent is not a defense to any charge.

3          MR. KAVACAS:  I agree with your Honor.  I

4  think coercion could create confusion in this case.

5          MR. MOIR:  Your Honor, I actually would object

6  to that.  The indictment spells out, among others, the

7  term coercion.  That was what was presented to the grand

8  jury.  And while I understand where the court is coming

9  from, I think that is part of the statutory language,

10 and frankly for the court to excise one part which

11 certainly the jury could consider and I think should

12 consider, I would object to that.

13         THE COURT:  Well the problem is this, then.  I

14 mean, you know the First Circuit case law is quite clear

15 on this and the government uses this strategy routinely

16 in indictments in this circuit and across the country,

17 they charge multiple ways in which the crime was

18 committed and use the conjunctive form in the

19 indictment, and they say he did it by doing A, B and C.

20 We know from case law that the way that allegation

21 should be construed is, did A, B or C.  And as long as

22 they do it one way and there's agreement on the one way,

23 the jury can convict on any, leaving the others as

24 surplusage.  Ordinarily the government's allowed to

25 strike surplusage from an indictment.  And to the extent

44

1    they allege coercion and acquiesce in my judgment that

2    it is potentially confusing to leave it in, I don't

3    think that you have a right to have it in.  It's sort of

4    my judgment, because it's just an alternative means by

5    which the crime may be committed.  To the extent the

6    government is electing not to proceed on that means, I

7    don't think it's a right to include it.  But you're free

8    to -- so I overrule your -- I note your objection to my

9    proposal not to instruct on coercion as a form of

10   action, that's one among several that are charged in the

11   indictment, and I overrule that objection.

12            So, I deny your motion with respect to Two

13   through Seven.  Did you have an argument with respect to

14   Eight, the possession charge?

15            MR. MOIR:  I do not, your Honor.

16            THE COURT:  All right.  So I deny the

17   defendant's motion for judgment as a matter of law with

18   respect to the counts in the indictment.

19            Now, I've got a draft copy of my instructions.

20   I want you to read those and I want to talk about them.

21   They're fairly brief and straightforward.  The

22   boilerplate part of the instructions I told you I was

23   going to give are the same ones I give in every single

24   case.  So I think you can focus on the elements.

25            What I suggest we do is let's take 10 minutes,

ADD-15

45

1    15 minutes for you to read those, and why don't you meet

2    me up at my office at quarter of 11, and we'll go over

3    them with a court reporter any objections you have to

4    them.

5            Now, if we finish that by 11, how long is the

6    government's closing expected to be.

7            MS. FITZGIBBON:  It's approximately

8    20 minutes.

9            THE COURT:  And how about yours?

10           MR. MOIR:  Approximately a half hour, your

11   Honor.

12           THE COURT:  All right.  If we can get done

13   with the jury instructions by 11, my proposal would be

14   to do closing arguments and then instruct immediately

15   after lunch.  Let them have lunch and then I'll give my

16   instruction immediately after that.  Is that acceptable

17   to everybody?

18           MR. KAVACAS:  Yes, your Honor.

19           MR. MOIR:  It is, your Honor.

20           THE COURT:  All right, so, let's take a short

21   break now.  I'll meet you up in chambers with a court

22   reporter at 10:45.

23           (Recess taken.)

24           (The following was held chambers:)

25           THE COURT:  So last night I presented you with

1    a rough draft of my instructions.  I haven't had a

2    chance to review the government's instructions and I

3    also, because of the speed, hadn't really come up with a

4    final version of my own instructions.  I did that last

5    night and I've given that to you now and I'm asking for

6    your observations, suggestions, and comments before the

7    closing arguments.

8         MR. MOIR:  Can I jump in, your Honor?

9         THE COURT:  Yes.

10        MR. MOIR:  I've had a chance to review.  I

11   didn't really go over the pattern ones that you usually

12   do, I have no problem with that I'm sure.  As far as the

13   ones dealing with the various substantive counts, they

14   seem to be quite in line with what you discussed with us

15   last night and I have no objection to them.

16        THE COURT:  All right.  And your objection

17   about the leaving out coercion of course you've already

18   raised and that's preserved.

19        Does the government have any objections with

20   respect to the proposed instructions?

21        MR. KAVACAS:  No objections, your Honor, just

22   one observation.  In the instruction regarding Count

23   Eight, possession of child pornography, paragraph four

24   says that the image -- I'll let you catch up.

25        THE COURT:  What page?

1    lines.  The government must prove beyond a reasonable

2    doubt that a person under the age of 18 years old was

3    knowingly transported across state lines by the

4    defendant and that the defendant intended at the time of

5    transportation for the person under 18 to engage in the

6    production of child pornography.

7            So now I'll talk to you about Counts Two

8    through Seven, the sexual exploitation of minor charges.

9            The defendant is charged in Counts Two through

10   Seven with sexual exploitation of a minor.

11           The defendant can be found guilty of these

12   crimes only if the government proves the following

13   elements beyond a reasonable doubt:

14           1.  At the time, R.B. was under the age of 18;

15           2.  The defendant knowingly employed, used,

16   persuaded, induced, or enticed R.B. to engage in

17   sexually explicit conduct for the purpose of producing a

18   visual depiction of such conduct; and

19           3.  Either the visual depiction was

20   transported across state lines or in foreign commerce or

21   the visual depiction was produced using material that

22   had been mailed or shipped or transported across state

23   lines or in foreign commerce.

24           Now I'll talk to you about Count Eight,

25   possession of child pornography.

1           The defendant is charged in Count Eight with

2   knowingly possessing child pornography that has been

3   mailed, shipped, or transported in interstate or foreign

4   commerce.

5           The defendant can be found guilty of this

6   crime only if the government proves the following

7   elements beyond a reasonable doubt:

8           1.   That the defendant knowingly possessed a

9   Hewlett Packard laptop computer;

10          2.   That the Hewlett Packard laptop computer

11  contained at least one image of child pornography;

12          3.   That the defendant knew that the Hewlett

13  Packard laptop computer contained an image of child

14  pornography; and

15          4.   That the image of child pornography had

16  been mailed, shipped, transported -- mailed, shipped, or

17  transported in interstate or foreign commerce by any

18  means, including by a computer.

19          Now I'm going to give you some definitions of

20  some of the terms that I have used here.

21          In determining whether or not the government

22  has proved each of the material elements of the offenses

23  charged in the superseding indictment beyond a

24  reasonable doubt, you are to consider the following

25  definitions:

1    <u>CHILD PORNOGRAPHY</u>:  Child pornography means

2    any visual depiction, including any computer-generated

3    image or picture, whether made or produced by

4    electronic, mechanical, or other means, of sexually

5    explicit conduct, where such visual depiction is of a

6    minor engaging in sexually explicit conduct.

7         Minor means any person under the age of 18.

8         Visual depiction includes data stored on a

9    computer disk, in this case, a computer hard drive.

10    <u>SEXUALLY EXPLICIT CONDUCT</u>:  Sexually explicit

11    conduct includes:  (1) sexual intercourse, including

12    genital-genital intercourse or oral-genital intercourse,

13    whether between persons of the same or opposite sex, and

14    (2) lascivious exhibition of the genitals or pubic area

15    of any person.

16    <u>KNOWINGLY</u>:  The term knowingly as used in

17    these instructions to describe the alleged state of mind

18    of the defendant means that she was conscious and aware

19    of her actions, that she realized what she was doing and

20    did not act because of ignorance, mistake or accident.

21         To decide whether the government has proved

22    beyond a reasonable doubt that the defendant acted

23    knowingly, you should consider all the surrounding

24    circumstances.  There's often no direct evidence of a

25    person's knowledge because it is difficult to prove

1    directly a person's state of mind.  Therefore, you

2    should consider all the evidence in the case in deciding

3    whether the government has proved beyond a reasonable

4    doubt that the defendant acted knowingly.

5           POSSESSION:  A person has possession of

6    something if she knows of its presence and content and

7    has physical control of it, or has the power and

8    intention to control it.

9           INTERSTATE OR FOREIGN COMMERCE:  Interstate

10   commerce includes commerce between one state, territory,

11   possession, or the District of Columbia and another

12   state, territory, possession or the District of

13   Columbia.  Foreign commerce includes commerce with a

14   foreign country.  Computer transmission of images across

15   state lines by means of the Internet would constitute

16   interstate commerce.

17          Consent by a person under the age of 18 is not

18   a defense to any of the charges set forth in the

19   superseding indictment.

20          The superseding indictment charges eight

21   separate crimes against the defendant.  Each offense

22   charged in the indictment and the evidence pertaining to

23   it should be considered separately.  The fact that you

24   may find the defendant guilty or not guilty on one of

25   the charges should not control your verdict as to any

18 USC § 2251. Sexual exploitation of children

(a)  Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.